

FILED ☑
RECEIVED ___   LODGED ___
___ COPY
MAY 1 6 2012
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>PAUL BEN ARREDONDO,<br><br>        Defendant. | NO. **CR '12 1 0 5 5 PHX FJM LOA**<br><br>**I N D I C T M E N T**<br><br>VIO: 18 U.S.C. § 666(a)(1)(B)<br>(Federal Programs Bribery)<br>Count 1<br><br>18 U.S.C. §§ 1341 and 1346<br>(Honest Services Mail Fraud)<br>Counts 2, 3<br><br>18 U.S.C. §§ 1951 and 2<br>(Hobbs Act Extortion)<br>Count 4<br><br>18 U.S.C. § 1001(a)(2)<br>(False Statements)<br>Count 5 |

THE GRAND JURY CHARGES:

## INTRODUCTION

At times material to this Indictment, unless otherwise stated:

### The Tempe City Council and the Arizona State Legislature

1.    The City of Tempe ("Tempe") was a political subdivision within the State of Arizona.

2.    Tempe was governed by a local government, called the City Council, that was comprised of one mayor and six city councilmembers. The mayor and councilmembers were

1  elected from the city at large by the qualified electors of the city to serve four-year terms, with

2  no term limits.

3       3.    Tempe's City Council was vested by the city's charter with all policy-making

4  powers of the city, as well as the exercise and performance of all duties and obligations imposed

5  on the city by law.  The City Council's responsibilities included passing ordinances that

6  conveyed or leased city property.

7       4.    From in or about February 2009 to in or about February 2010, Tempe received

8  more than $10,000 in funds from the United States Government in the form of grants, contracts,

9  subsidies, loans, guarantees, insurance, and other forms of federal assistance.

10       5.    The  Arizona  State  Legislature  consisted  of  a  Senate  and  a  House  of

11  Representatives.  Members of the House of Representatives were elected from districts within

12  the State of Arizona by the qualified electors of the district to serve two-year terms, with a term

13  limit of four consecutive terms.

14  Relevant Individuals and Entities

15       5.    Defendant PAUL BEN ARREDONDO was a councilmember in Tempe and served

16  in that capacity for approximately 16 years, until in or about July 2010.  ARREDONDO was

17  elected to the House of Representatives of the Arizona State Legislature in or about November

18  2010.

19       6.    Company A was a fictitious company whose business objective was purportedly

20  to develop real estate projects, including within the City of Tempe.  Representatives of Company

21  A were, in fact, undercover agents with the FBI.

22  General Allegations

23       7.    Beginning  in  or  about  February  2009  to  in  or  about  November 2010,

24  ARREDONDO solicited, demanded, agreed to accept, and accepted from representatives of

25  Company A things of value, including, but not limited to, the following:

26       a.    On or about February 18, 2009, ARREDONDO solicited a representative

27  of Company A to purchase a table for an upcoming charity event for $525, with the

28  understanding that ARREDONDO would invite people of his choice to use those seats.  On or

2

1   about March 5, 2009, at ARREDONDO's solicitation, a representative of Company A purchased
2   a table for the above-referenced charity event for $550.

3      b. On or about March 5, 2009, ARREDONDO solicited the representative
4   from Company A to purchase a table at a second charity event for $600, again with the
5   understanding that ARREDONDO would invite people of his choice to use those seats. On or
6   about April 1, 2009, on Company A's behalf, an intermediary purchased a $600 table for
7   ARREDONDO's use at the second charity event.

8      c. On or about September 9, 2009, ARREDONDO accepted two tickets to an
9   Arizona Cardinals-San Francisco 49ers professional football game provided by a representative
10  of Company A. The value of the tickets was approximately $305.95.

11     d. On or about October 23, 2009, ARREDONDO accepted four tickets to a
12  New York Yankees-Los Angeles Angels American League Championship Series professional
13  baseball game provided by a representative of Company A. The value of the tickets was
14  approximately $1,225.

15     e. On or about June 17, 2010, ARREDONDO agreed to accept eighteen
16  tickets provided by a representative of Company A to attend various Arizona Diamondbacks
17  professional baseball games. The value of the eighteen tickets was approximately $2,400. To
18  conceal that he had agreed to accept the tickets while a member of the City Council,
19  ARREDONDO instructed the representative of Company A to mail them to his home in Tempe,
20  Arizona after July 1, 2010. ARREDONDO gave that instruction "to make it a lot easier" for him
21  because, as he explained, "I'm through with this council after that, and then I can honestly say
22  I've never taken a look at these guys until after this." On or about July 2, 2010, ARREDONDO
23  received the eighteen tickets.

24     f. On or about November 19, 2010, ARREDONDO, while a Representative-
25  elect for the State of Arizona House of Representatives, solicited from a representative of
26  Company A two tickets to a Duke-Michigan State college basketball game. ARREDONDO

3

1 subsequently accepted those tickets, which were valued at approximately $1,200.

2 ARREDONDO caused the tickets to be mailed to his home in Tempe, Arizona.

3        8.     ARREDONDO did not pay for any of the things of value described above in

4 paragraphs 7(a)-(f) of this Indictment.

5        9.     ARREDONDO took and agreed to take action as a councilmember in Tempe, and

6 agreed to take action as a member of the Arizona State Legislature, for the benefit of Company

7 A. ARREDONDO's acts included, but were not limited to, the following:

8           a.     During a conversation with a representative of Company A that occurred

9 on or about March 5, 2009, ARREDONDO agreed to talk to the City of Tempe Community

10 Development Manager (the "Development Manager") to facilitate a future telephone call

11 between the representative of Company A and the Development Manager regarding Company

12 A's development project.

13           b.     On or about May 1, 2009, ARREDONDO facilitated a meeting between a

14 representative of Company A and a Principal Planner for Tempe (the "Principal Planner"), for

15 the purpose of assisting Company A's acquisition of city-owned real estate and providing

16 additional support for Company A's development project.

17           c.     On or about June 25, 2009, ARREDONDO divulged to a representative of

18 Company A information relating to the City of Tempe's bidding process, including the fact that

19 the city would be willing to accept a price of $15 per square foot for Company A's development

20 project. During this same meeting, ARREDONDO, at his own initiation and based upon

21 information he had acquired as a councilmember, suggested that Company A would maximize

22 its chances of acquiring the city-owned property by proposing a contingency contract to city

23 officials.

24           d.     On or about August 13, 2009, to address a question from a representative

25 of Company A, ARREDONDO asked the Principal Planner about benefits or entitlements

26 Company A could receive for developing in a particular area.  On or about that same day,

27

28

4

1   ARREDONDO agreed to facilitate a telephone call between a representative of Company A and

2   the Principal Planner.

3           e.      On or about December 9, 2009, ARREDONDO told representatives of

4   Company A that he had spoken with the Principal Planner to influence that official's decision

5   regarding Company A; that is, to persuade the Principal Planner to approve Company A's

6   development project.

7           f.      On or about April 15, 2010, ARREDONDO facilitated a meeting involving

8   ARREDONDO, representatives of Company A, and a Tempe councilmember-elect, for the

9   purpose of assisting Company A's acquisition of city-owned real estate.   Before the

10  councilmember-elect arrived, ARREDONDO discussed his campaign for a seat in the Arizona

11  House of Representatives and his continued support for Company A's project with the

12  representative of Company A. ARREDONDO assured the representative of Company A, "You

13  guys will ask, you guys will have. I don't know how else to say it. We'll be just fine because

14  not only we're covered at the city, we're covered now at the state." After the councilmember-

15  elect arrived, ARREDONDO made introductions and discussed Company A's development

16  proposal.

17          g.      On or about May 13, 2010, ARREDONDO told a representative of

18  Company A that he had spoken to two other Tempe councilmembers to persuade those officials

19  to approve Company A's development project.

20          h.      On or about June 17, 2010, ARREDONDO facilitated a meeting involving

21  ARREDONDO, a representative of Company A, two other Tempe councilmembers, and a

22  Tempe councilmember-elect, for the purpose of assisting Company A's acquisition of city-

23  owned real estate and providing additional support for Company A's development project.

24  During that meeting, ARREDONDO advocated for Company A's development project,

25  explaining the steps he had already taken to advance it, including what he had told the

26  representatives of Company A to do in order to obtain City Council support. ARREDONDO

27  indicated that the purpose of the meeting was to introduce councilmembers to a representative

28

5

of Company A so that Company A would continue to have personal access to the City Council after ARREDONDO's departure.

       i.      On or about November 19, 2010, after ARREDONDO was elected to the Arizona House of Representatives, but prior to being sworn in for that seat, ARREDONDO told a representative of Company A that he would reach out to Tempe councilmembers to help Company A's project move forward.

       j.      At no time during ARREDONDO's interactions with city officials or other councilmembers about Company A did he disclose the fact that he had received anything of value from representatives of Company A.

     10.    The value of the business, transaction, and/or series of transactions to which the things of value related, which was the value of Company A's proposed development project, was at least $5,000.

## COUNT ONE

### [18 U.S.C. § 666(a)(1)(B): Federal Programs Bribery]

     11.    Paragraphs 1 through 10 of the Indictment are realleged and incorporated by reference as if fully set forth herein.

     12.    From in or about February 2009 to in or about July 2010, in the District of Arizona and elsewhere, defendant PAUL BEN ARREDONDO, being an agent of the City of Tempe, a political subdivision within the State of Arizona, which received benefits of $10,000 in the one-year period from in or about February 2009 to in or about February 2010, from federal programs involving a grant, contract, subsidy, loan, guarantee, insurance, and other forms of federal assistance, did corruptly solicit, demand, accept, and agree to accept something of value intending to be influenced and rewarded in connection with the business, transaction, and series of transactions of such state government involving something of value of $5,000 or more: namely, ARREDONDO accepted and agreed to accept sporting tickets and monetary contributions for charity events from representatives of Company A, intending to be influenced and rewarded in connection with Company A's development project in the City of Tempe.

1  All in violation of Title 18, United States Code, Section 666(a)(1)(B).

2  ## COUNTS TWO AND THREE

3  ### [18 U.S.C. §§ 1341 and 1346: Honest Services Mail Fraud]

4  13.  Paragraphs 1 through 10 of the Indictment are realleged and incorporated by

5  reference as if fully set forth herein.

6  14.  From in or about February 2009 to in or about November 2010, in the District of

7  Arizona and elsewhere, defendant PAUL BEN ARREDONDO knowingly devised and intended

8  to devise a scheme and artifice to defraud and deprive the Tempe City Council, the citizens of

9  Tempe, the Arizona State Legislature, and the citizens of the State of Arizona of their right to

10  the honest services of elected members of the Tempe City Council and the Arizona State

11  Legislature through bribery and concealment of material information.

12  15.  On or about the date of each Count listed below, in the District of Arizona and

13  elsewhere, defendant PAUL BEN ARREDONDO, for the purpose of executing and attempting

14  to execute the above-described scheme and artifice to defraud and deprive, placed and caused

15  to be placed in a post office and an authorized depository for mail, to be sent and delivered by

16  the United States Postal Service and by a private and commercial interstate carrier, the following

17  matters and things:

| Count | Date | Description |
|-------|------|-------------|
| 2 | 7/1/2010 | Eighteen tickets to Arizona Diamondbacks home baseball games, valued at $2,400, mailed via FedEx to PAUL BEN ARREDONDO's home in Tempe, Arizona. |
| 3 | 11/26/2010 | Two tickets to a Duke-Michigan State basketball game, valued at $1,200, mailed via FedEx to PAUL BEN ARREDONDO's home in Tempe, Arizona. |

23  All in violation of Title 18, United States Code, Sections 1341 and 1346.

7

## COUNT FOUR

### [18 U.S.C. §§ 1951 and 2: Hobbs Act Extortion]

16.     Paragraphs 1 through 10 of this Indictment are realleged and incorporated as though fully set forth herein.

17.     From in or about February 2009 to in or about November 2010, in the District of Arizona and elsewhere, defendant PAUL BEN ARREDONDO, did knowingly attempt to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, Section 1951; that is, ARREDONDO, while serving as a member of the Tempe City Council and a Representative-elect of the Arizona State Legislature, solicited and accepted from Representatives of Company A, with their consent, sporting tickets and monetary contributions for charity events which were not due to ARREDONDO, under color of official right and in return for favorable official action.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## COUNT FIVE

### [18 U.S.C. § 1001(a)(2) – False Statements]

18.     Paragraphs 1 through 10 of this Information are realleged and incorporated as though fully set forth herein.

19.     On or about January 17, 2012, in the District of Arizona, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant PAUL BEN ARREDONDO did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations; namely, during the course of an interview by FBI agents conducting an official investigation, ARREDONDO stated that he did not accept any monetary contributions for special events, that he did not accept any sporting tickets, and that he did not accept any money or anything else from representatives of Company A, when, in truth and in fact, as ARREDONDO well knew, those statements were false because ARREDONDO

1    had solicited, demanded, accepted, and agreed to accept from representatives of Company A

2    approximately $5,100 in sporting tickets and $1,150 in monetary contributions for charity events.

3        All in violation of Title 18, United States Code, Section 1001(a)(2).

4            **<u>NOTICE OF FORFEITURE</u>**

5      20.     Paragraphs 1 through 19 of this Indictment are realleged and incorporated as

6    though fully set forth herein.

7      21.     Pursuant to Title 18, United States Code, Sections 981(a)(1) and 982(a), and Title

8    28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18,

9    United States Code, Section 666(a)(1)(B), as set forth in Count One of this Indictment, defendant

10   PAUL BEN ARREDONDO shall forfeit to the United States of America any property, real or

11   personal, which constitutes or is derived from proceeds traceable to the offense.

12      22.     Pursuant to Title 18, United States Code, Sections 981(a)(1) and 982(a), and Title

13   28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18,

14   United States Code, Sections 1341 and 1346, as set forth in Counts Two and Three, defendant

15   PAUL BEN ARREDONDO shall forfeit to the United States of America any property, real or

16   personal, which constitutes or is derived from proceeds traceable to the offense.

17      23.     Pursuant to Title 18, United States Code, Sections 981(a)(1) and 982(a), and Title

18   28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18,

19   United States Code, Section 1951, as set forth in Count Four, defendant PAUL BEN

20   ARREDONDO shall forfeit to the United States of America any property, real or personal,

21   which constitutes or is derived from proceeds traceable to the offense.

22      24.     If any of the property subject to forfeiture in paragraphs 21, 22, and 23, as a result

23   of any act or omission of defendant PAUL BEN ARREDONDO:

24          (a)     cannot be located upon the exercise of due diligence;

25          (b)     has been transferred or sold to, or deposited with, a third party;

26          (c)     has been placed beyond the jurisdiction of the Court;

27          (d)     has been substantially diminished in value; or

28

1         (e)     has been commingled with other property which cannot be divided without

2                difficulty;

3 the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

4 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

5 982(b)(1), and Title 28, United States Code, Section 2461(c).

6       All pursuant to Title 18, United States Code, Sections 981(a)(1) and 982(a)(1), and Title

7 28, United States Code, Section 2461(c).

8

9

10                                        A TRUE BILL

11                                         /S/
                       FOREPERSON OF THE GRAND JURY

12                        Date: May 16, 2012

13

JACK SMITH
14 Chief, Public Integrity Section
United States Department of Justice
15

16        /S/
EDWARD T. KANG
17 MONIQUE T. ABRISHAMI
Trial Attorneys
18 Public Integrity Section
United States Department of Justice
19

20        /S/
FREDERICK A. BATTISTA
21 Assistant U.S. Attorney
United States Attorney's Office
22 District of Arizona

23

24

25

26

27

28