LANNY A. BREUER
Assistant Attorney General
Attorney for the United States
Acting Under Authority of 28 U.S.C. § 515

JACK SMITH
Chief, Public Integrity Section

M. KENDALL DAY
Deputy Chief
Virginia State Bar Member
m.kendall.day@usdoj.gov

MONIQUE ABRISHAMI
Trial Attorney
Florida State Bar Member
monique.abrishami@usdoj.gov

Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW, 12th Floor
Washington, D.C. 20005
Telephone (202) 514-1412
Facsimile (202) 514-3003

FREDERICK A. BATTISTA
Assistant U.S. Attorney
Maryland State Bar Member
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004
Telephone (602) 514-7500
fred.battista@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Paul Ben Arredondo,<br><br>    Defendant. | CR-12-1055-001-PHX-FJM<br><br>**UNITED STATES' OBJECTIONS TO PRE-SENTENCE INVESTIGATION REPORT** |

Pursuant to Federal Rule of Criminal Procedure 32(f)(1), the United States objects the following two portions of the draft pre-sentence report (PSR) for defendant Paul Ben Arredondo:

(1) the determination that the two Counts group pursuant to U.S.S.G. § 3D1.2; and

(2) the recommendation of a downward variance.

The net effect of the United States' objections is a two-level increase in the guideline calculation set forth in the draft PSR for defendant Arredondo, resulting in a total offense level of 19, including all adjustments for specific offense characteristics and acceptance of responsibility.

**I.     Under the specific facts of this case, the offenses of honest services mail fraud and mail fraud do not group.**

The draft PSR concludes that Count 1 of the Information and Count 2 of the Indictment "are grouped for guideline calculation purposes." PSR ¶ 25. The government respectfully disagrees. Section 3D1.2 of the United States Sentencing Guidelines provides that counts "involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. The phrase "involving substantially the same harm" is further defined to include situations in four categories.

The first category, "[w]hen counts involve the same victim and the same act or transaction," clearly does not apply to the instant offenses. *Id.* § 3D1.2(a). The Commentary to § 3D1.2 explains that this category includes counts that "represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim." *Id.* Cmt. 3. Defendant Arredondo pleaded guilty to two separate criminal schemes, one in which he betrayed the public trust by soliciting and accepting bribes from undercover FBI agents posing as developers, and another in which he defrauded charitable donors by omitting essential information that might have impacted their decisions to donate. The two offenses do not share victims (except that the charitable donors were members of the larger public that Arredondo betrayed by secretly soliciting and accepting bribes as a public official), did not create the same injury, and did not involve the same criminal episodes.

The second category, "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan," also does not apply to Arredondo's offenses, for the same reasons listed above. Although this category encompasses "legally distinct offenses occurring at different times," it "does not authorize" grouping where, as here, the offenses "cannot be considered to represent

2

essentially one composite harm. *Id.* § 3D1.2 Cmt. 4. The subject crimes harmed different victims in different ways, and this provision does not allow for them to be grouped for sentencing purposes.

The third category, "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts," does not describe the relationship between the guidelines provision for honest services mail fraud (§ 2C1.1) and mail fraud (§ 2B1.1).

The final category, and the one cited in PSR ¶ 25 as the basis for grouping the counts, allows for grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, . . . or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." U.S.S.G. § 3D1.2(d). As an initial matter, the offense level for the honest services fraud in this case is not "determined largely on the basis of the total amount of harm or loss." Here, the base offense level for the honest services mail fraud offense is 14 pursuant to § 2C1.1(a)(1) (PSR ¶ 26), plus two offense levels for the value of the payments exceeding $5,000 pursuant to § 2C1.1(b)(2) (PSR ¶ 27), plus four offense levels as the offense involved an elected public official pursuant to § 2C1.1(b)(3) (PSR ¶ 28), which results in a total adjusted offense level of 20 prior to consideration of acceptance of responsibility (PSR ¶ 32). The two offense levels added for the value of the payments account for only 10% of the subtotaled adjusted offense level of 20 for the subject offense.

Furthermore, grouping is not appropriate pursuant to § 3D1.2(d) because, as with all grouping under § 3D1.2, grouping under subsection (d) should only occur when the offenses "involve substantially the same harm." *United States v. Wahid*, 614 F.3d 1009, 1015 (9th Cir. 2010); *see also United States v. Laurienti*, 611 F.3d 530, 536 (9th Cir. 2010). Although § 3D1.2(d) lists a series of guideline provisions that generally should be grouped — including §§ 2B1.1 and 2C1.1, the guidelines at issue in this case — even these listed guidelines should not be grouped where the underlying offenses do not involve the same harm. For example, in *United*

3

*States v. Keen*, 676 F.3d 981, 988, 998-1,000 (11th Cir. 2012), the Eleventh Circuit recently reversed a lower court that grouped convictions for fraudulently obtaining property from a local government receiving federal funds in violation of 18 U.S.C. §§ 666 and 2, unrelated offenses in a different case concerning conspiracy to commit fraud in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B), and accepting or agreeing to accept a bribe in violation of 18 U.S.C. §§ 666(a)(1)(B) and (2). In so doing, the Eleventh Circuit first rejected the argument that grouping was required because the defendant's convictions were listed in § 3D1.2(d) as ones to be grouped under the subsection. The court noted that, even under those circumstances, grouping was not necessary because the "'mere listing' of [the] offenses as types that 'are to be grouped does not automatically necessitate grouping.'" *Keen*, 676 F.3d at 998, quoting *United States v. McClendon*, 195 F.3d 598, 601 (11th Cir.1999). Second, the court found that grouping was not appropriate under the second clause of § 3D1.2(d) because the offense behavior was not "ongoing or continuous in nature." *Id.* at 998. Specifically, the court noted that the relevant guideline for the bribery offense, U.S.S.G. § 2C1.1, was not written to cover "ongoing or continuous behavior" as required by the second clause of subsection (d). *Id.* at 998-99. Third, the court rejected the argument that grouping was appropriate under the first clause of subsection (d) because "the offense level [for each count was] determined largely on the basis of the total amount of harm . . . or some other measure of aggregate harm, . . . specifically, the aggregate harm and loss to the public trust of [local] citizenry." *Id.* at 999 (internal quotation marks omitted). The court explained that the "first clause of subsection (d) obviously relates to offenses involving tangible harms, as measured by financial harm or loss, drug quantity, or damage to the environment," and further noted:

> There is no indication whatsoever that the clause is intended to apply to offenses involving intangible harms to the public trust. Indeed, if the clause were applied in that way, it would become grossly over-inclusive, since nearly every criminal offense harms the public trust in some way.

4

*Id.* at 999 (internal citations omitted). [1]

In this case, the guidelines provisions at issue are U.S.S.G. § 2B1.1 for mail fraud and § 2C1.1 for honest services mail fraud. Both provisions cross-reference the loss table in § 2B1.1 to determine the final offense level and are listed as "to be grouped" under § 3D1.2(d). However, they do not group given the facts of this case. The overarching consideration for grouping is whether the counts "*involve[e] substantially the same harm.*" § 3D1.2. As described above, courts have recognized this purpose behind the grouping rules and declined to group convictions that stem from separate and distinct criminal schemes and result in separate and distinct harms, even if the applicable guidelines provisions are listed as "to be grouped" under § 3D1.2. Here, defendant Arredondo engaged in two different criminal schemes: one to solicit and accept bribes from undercover FBI officials acting as potential developers in his constituency, and the other to defraud charitable donors of their money. The honest services fraud guidelines measure harm in terms of "the value of anything obtained or to be obtained by a public official," § 2C1.1(b)(2), and the mail fraud guidelines measure harm in terms of loss, § 2B1.1 (b)(1). The harm in the first crime is the violation of public trust, and the harm in the second crime is the defrauding of specific individuals. These crimes did not harm the same victims, or even different victims in the same way, and they should not be grouped. For this reason and the reasons outlined above, it is inappropriate to group the two Counts in this case.

---

[1] Ultimately, section 3D1.2(d) was intended to be used when the measurement of harm for one offense is essentially the equivalent to the measurement of harm in other related offenses, which occurs when the harm for all offenses is fungible. *See* U.S.S.G. Ch. 1, Pt. A, 4(e), Introduction/Policy Statement/Multi-Count Convictions:

> [T]hese rules are set out in Chapter Three, Part D (Multiple Counts). They essentially provide: (1) when the conduct involves fungible items (e.g., separate drug transactions or thefts of money), the amounts are added and the guidelines apply to the total amount; (2) when nonfungible harms are involved, the offense level for the most serious count is increased (according to a diminishing scale) to reflect the existence of other counts of conviction.

In this case, the harm caused by defendant's honest services mail fraud — betrayal of the public trust — is clearly not fungible.

5

Case 2:12-cr-01055-FJM   Document 46   Filed 01/11/13   Page 6 of 8

If the convictions are not grouped, then § 3D1.4 requires that the highest offense level, in this case the offense level of 20 calculated in Paragraphs 26-30 of the draft PSR, be increased by two levels. The adjusted offense level without considering acceptance of responsibility is therefore 22.

### II. Defendant Arredondo's actions and personal circumstances do not warrant a downward variance.

The draft PSR recommends that the Court grant the defendant a downward variance pursuant to "a combination of factors relating to the defendant's prior good works, physical and mental conditions, and aberrant conduct." PSR ¶ 19.

The Sentencing Guidelines provide that "[c]ivic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11; *see also United States v. Kulick*, 629 F.3d 165, 176 (3rd Cir. 2010) (explaining that a downward departure based on this provision requires a lower court to find "that this factor existed to an exceptional degree or, in some way, that makes the case different from the ordinary case in which the factor is present" (internal quotation marks omitted)). Although these factors are "not ordinarily relevant," the draft PSR points to defendant Arredondo's "extensive history as a teacher, coach, and public servant" and "aberrant conduct" as grounds for departure. PSR ¶ 19. Contrary to the recommendation set forth in the PSR, defendant Arredondo's history of public service is irrevocably marred by his criminal solicitation and acceptance of bribes and should not be used as a basis for a departure for either of his convictions in this case. *See United States v. Theunick*, 651 F.3d 578, 592 (6th Cir. 2011) (affirming the lower court's denial of a downward departure for military and public service, noting that the lower court explained that because "'the crime wouldn't have been able to have been committed in the way in which it was had it not been for the position of public authority and public trust that the defendant occupied as chief of police,' a downward departure based on public service was not warranted").

6

In this case, the keys to defendant Arredondo's criminal success were the use of his image as an influential councilman who could get things done (and thereby secretly attract bribes in exchange for his efforts as a public official), and the use of his image as a capable and honest teacher, coach, and public official who could be trusted to manage a scholarship fund (and thereby quietly use some of donated funds to benefit his relatives). It is clearly inappropriate for defendant Arredondo to use his background first in furtherance of his criminal conduct and then as a basis for leniency before this Court.

Furthermore, far from engaging in an isolated instance of aberrant conduct, defendant Arredondo willingly solicited and accepted bribes several times over the course of several months. He also perpetuated and operated a fraudulent scheme with respect to his scholarship fund for many years, abusing his position as a well-respected and trusted leader of the community and public servant. In this case, his history as a coach and teacher, and his works as a public servant, do not rise to the level of exceptional service that would overcome his criminal actions in this case to warrant out-of-the-ordinary sentencing.

The draft PSR also points to defendant Arredondo's "physical and mental conditions" as grounds for a downward departure. PSR ¶ 19. Although the government has requested the medical report that was referred to in the draft PSR, Arredondo has refused to provide it until seven days prior to his sentencing. However, even the mental and physical conditions outlined in the draft PSR do not constitute the sort of "unusual" or "extraordinary" conditions that would warrant a downward departure. U.S.S.G. §§ 5H1.3, 5H1.4; *see, e.g., United States v. Harris*, 493 F.3d 928, 932 (8th Cir. 2007) (affirming the denial of a downward departure on the basis of the defendant's mental condition despite evidence regarding the defendant's "limited intellectual functioning and a psychiatric disorder"); *c.f. United States v. Goodwin*, 594 F.3d 1, 4, 7 (D.C. Cir. 2010) (finding no prejudice from defense counsel's failure to argue that the defendant's "severe burns over 60 percent of his body in a 1986 house fire" warranted a downward departure because the defendant could not have shown that the impairment was extraordinary enough to warrant departure).

Without a downward departure or variance, and with an adjusted offense level of 19 (including the application of acceptance of responsibility points), the applicable guidelines range is 30 to 37 months.

Respectfully submitted this 11th day of January, 2013.

          LANNY A. BREUER
          Assistant Attorney General
          Criminal Division
          Attorney for the United States
          Acting Under Authority of 28 U.S.C. § 515

          JACK SMITH
          Chief, Public Integrity Section
          United States Department of Justice

          *S/ Monique Abrishami*

          MONIQUE ABRISHAMI
          Trial Attorney

          M. KENDALL DAY
          Deputy Chief
          Public Integrity Section
          United States Department of Justice

          *S/ Frederick A. Battista*

          FREDERICK A. BATTISTA
          Assistant United States Attorney
          U.S. Attorney's Office
          District of Arizona

**CERTIFICATE OF SERVICE**

I hereby certify that on January 11, 2013, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lee Stein
Jean-Jacques Cabau
Amy Chang
Counsel for Defendant

Probation Officer John Mullavey
U.S. Probation Office

*S/ Monique Abrishami*
MONIQUE ABRISHAMI
Trial Attorney
Public Integrity Section